## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COREY FUHRHOP and JAMES LESLIE, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>JUSTWATCH, INC.<br><br>*Defendant.* | Case No.<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiffs Corey Fuhrhop and James Leslie, individually and on behalf of all others similarly situated, bring this Class Action Complaint against Defendant JustWatch Inc. ("JustWatch" or "Defendant") for violations of the federal Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), and upon personal knowledge as to Plaintiffs' own conduct, and on information and belief as to all other matters including based on an investigation by counsel, allege as follows:

## INTRODUCTION

1.      This is a class action against JustWatch for violating Plaintiffs' privacy rights under federal law by knowingly disclosing consumers' personally identifiable information, including "information which identifies a person as having requested or obtained specific video materials or services from a video tape provider" ("PII"), through the use of a hidden tracking code created by Meta Platforms, Inc. (formerly known as Facebook) ("Meta") and integrated by JustWatch into JustWatch's online video service platforms, including JustWatch.com.

2.      JustWatch develops, owns, and operates an online video request and streaming

platform called "JustWatch.com" that allows consumers to "easily find out where to watch [their] favorite movies & TV shows in the United States."  JustWatch users can access thousands of movies and other video content from their computer, mobile device, or other video streaming device.

3.    Unbeknownst to Plaintiffs and members of the Class (defined below), Defendant knowingly and intentionally discloses its users' video viewing history every time they request or watch video content on JustWatch.com.

4.    JustWatch shares its customers' PII with Meta for advertising and marketing purposes via the "Facebook pixels on [their] website."[1]

5.    The "Facebook Pixel" is a hidden tracking code incorporated into JustWatch.com that sends Meta time-stamped, personally-identifiable records of consumers, such as Plaintiffs and Class members, including information which identifies a person as having requested or obtained specific video materials or services from JustWatch.[2]

6.    Meta combines this personal information with other information about each consumer gathered from other sources and uses it for marketing and advertising purposes.

7.    JustWatch is a "video tape service provider" under the VPPA.

8.    The VPPA prohibits "video tape service providers," such as JustWatch, from knowingly disclosing "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider" absent informed, written

---

[1] https://support.justwatch.com/hc/en-us/articles/6549675973149-Privacy-Policy.
[2] JustWatch's Privacy Policy refers to "Facebook pixels." Upon information and belief, the "Facebook pixels" referenced in JustWatch's Privacy Policy refer to a piece of code offered by Meta, which Meta now refers to as the "Meta Pixel." Plaintiffs use the nomenclature used by JustWatch in this Complaint; however, the terms "Facebook pixel(s)" and "Meta pixel(s)" may be used interchangeably, and from time to time, Plaintiffs may refer to the "Facebook pixel(s)" as the "Meta pixel(s)" where appropriate in this Complaint.

consent and opt-out rights, which JustWatch does not obtain or provide.

9.      JustWatch violates the VPPA by sharing its users' video viewing histories with Meta via the Facebook pixel.

10.     Accordingly, Plaintiffs bring this Class Action Complaint for legal and equitable remedies to compensate Plaintiffs and members of the Class (defined below) for Defendant's statutory violations and to end Defendant's practice of knowingly disclosing JustWatch users' highly sensitive video viewing histories to third parties.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 over the claims that arise under the Video Privacy Protection Act, 18 U.S.C. § 2710.

12.     This Court also has jurisdiction under 28 U.S.C. § 1332(d) because this action is a class action in which the aggregate amount in controversy for the proposed Class exceeds $5,000,000, and at least one member of the Class is a citizen of a state different from that of Defendant.

13.     Venue is appropriate in this District pursuant to 28 U.S.C. §1391 because, upon information and belief, Defendant's principal place of business is located at One Boston Place, Ste. 2600, Boston, Massachusetts 02108 and Defendant is subject to personal jurisdiction in this District.

14.     In addition and/or in the alternative, Defendant has significant contacts with Massachusetts because its last known principal place of business was in Massachusetts, it operates a website (www.justwatch.com/us) accessible in Massachusetts, it delivers video content to Massachusetts residents, and has derived substantial revenue from the delivery of video content in Massachusetts through the purposeful direction of its activities to Massachusetts and purposeful

availment of the protections of the laws of Massachusetts, such that personal jurisdiction would be proper in Massachusetts under traditional notions of fair play and substantial justice.

## PARTIES

15.    Plaintiff Corey Fuhrhop is a resident of Chicago, Illinois.  Plaintiff opened a JustWatch account in 2020 and watched videos on JustWatch from that time until the present. Plaintiff has had a Facebook account for more than two years.  During the relevant time period, Plaintiff requested and watched videos on JustWatch while logged into his Facebook account. By doing so, Plaintiff's JustWatch video viewing history was disclosed to third parties, including Meta, pursuant to the systematic process described herein. Plaintiff did not provide express written consent—in the form required by the VPPA—to the disclosure of his video viewing history.

16.    Plaintiff James Leslie is a resident of Lexington, Kentucky.  Plaintiff opened a JustWatch account in 2015 and watched videos on JustWatch from that time until the present. Plaintiff has had a Facebook account for more than two years.  During the relevant time period, Plaintiff requested and watched videos on JustWatch while logged into his Facebook account. By doing so, Plaintiff's JustWatch video viewing history was disclosed to third parties, including Meta, pursuant to the systematic process described herein. Plaintiff did not provide express written consent—in the form required by the VPPA—to the disclosure of his video viewing history.

17.    JustWatch is a business corporation duly organized and existing under the laws of the State of Delaware. Upon information and belief, Defendant's principal place of business is located at One Boston Place, Ste. 2600, Boston, Massachusetts 02108. *See* Ex. A (JustWatch Inc. filing with California Secretary of State listing its principal address, as of November 2022, as One

4

Boston Place, Ste. 2600, Boston, Massachusetts 02108).[3] Just Watch is in the business of delivering prerecorded digital video content and owns and operates the JustWatch digital video platform. On information and belief, JustWatch has hundreds of thousands of U.S. subscribers systematically discloses JustWatch users' video viewing histories to third parties in the manner described herein.

## FACTUAL ALLEGATIONS

### A. THE VIDEO PRIVACY PROTECTION ACT

18.    The VPPA generally prohibits the knowing disclosure of a customer's video viewing history without the informed, written consent of the customer in a form "distinct and separate from any form setting forth other legal or financial obligations." Under the statute, the Court may award actual damages (but not less than liquidated damages of $2,500.00 per person), punitive damages, equitable relief, and attorney's fees.

19.    The VPPA was initially passed in 1988 for the explicit purpose of protecting the privacy of individuals' and their families' video rental, purchase and viewing data. Leading up to its enactment, members of the United States Senate warned that "[e]very day Americans are forced to provide to businesses and others personal information without having any control over where that information goes." S. Rep. No. 100-599 at 7-8 (1988).

20.    Senators at the time were particularly troubled by disclosures of records that reveal

---

[3] Defendant's California business registration—which lists its principal place of business in Boston—was apparently terminated in November 2022 and/or lapsed in March 2023. *See* Ex. A at 1. Plaintiff has been unable to locate any recent business registrations in other states with more current information. To the extent Defendant has recently changed its principal place of business to some place other than Boston, jurisdiction and venue would nevertheless be proper in this Court as Defendant's principal place of business was located in Boston during the majority of the relevant time period (and a majority of the proposed Class period).

consumers' purchases and rentals of videos and other audiovisual materials. As Senator Patrick Leahy and the late Senator Paul Simon recognized, records of this nature offer "a window into our loves, likes, and dislikes," such that "the trail of information generated by every transaction that is now recorded and stored in sophisticated record-keeping systems is a new, more subtle and pervasive form of surveillance." S. Rep. No. 100-599 at 7-8 (1988) (statements of Sens. Simon and Leahy, respectively).

21.      In proposing the Video and Library Privacy Protection Act (later codified as the VPPA), Senator Leahy stated that "[i]n practical terms our right to privacy protects the choice of movies that we watch with our family in our own homes. And it protects the selection of books that we choose to read." 134 Cong. Rec. S5399 (May 10, 1988). Thus, the personal nature of such information, and the need to protect it from disclosure, is the inspiration of the statute: "[t]hese activities are at the core of any definition of personhood. They reveal our likes and dislikes, our interests and our whims. They say a great deal about our dreams and ambitions, our fears and our hopes. They reflect our individuality, and they describe us as people." *Id.*

22.      While these statements rang true in 1988 when the VPPA was passed, the importance of legislation like the VPPA in the modern era of data mining from online activities is more pronounced than ever before. During a recent Senate Judiciary Committee meeting, "The Video Privacy Protection Act: Protecting Viewer Privacy in the 21st Century," Senator Leahy emphasized the point by stating that while "it is true that technology has changed" over the years, "we have to be faithful to our fundamental right to privacy and freedom," and "[t]oday the social networking, video streaming, the 'cloud,' mobile apps and other new technologies have

revolutionized the availability of Americans' information."[4]

23.    In this case, Defendant deprived Plaintiffs and the Class members of that right by

knowingly and systematically disclosing their video viewing histories to unauthorized third parties

without obtaining informed written consent, as explained herein.

**B. JUSTWATCH VIDEO PLATFORM**

24.    JustWatch owns and operates JustWatch.com and also the "JustWatch" mobile

application.

25.    JustWatch offers a catalog of movies and TV shows for consumers to browse and

recommendations for content to watch.

26.    JustWatch calls itself a "streaming guide," which enables consumers to "stream . .

. entertainment with JustWatch."[5]



---

[4] *See* Committee on the Judiciary, Subcommittee on Privacy, Technology and the Law, The Video Privacy Protection Act: Protecting Viewer Privacy in the 21st Century, Senate Judiciary Committee    Subcommittee    on    Privacy,    Technology    and    the    Law, https://www.govinfo.gov/content/pkg/CHRG-112shrg87342/html/CHRG-112shrg87342.htm (last visited October 20, 2023).

[5] https://www.justwatch.com (last visited November 29, 2023)

27.     To use JustWatch, users create a JustWatch.com account.  The user must secure login credentials by signing up and creating a user account.  To create an account, the user provides JustWatch with personal information, including email address, location, preferred language, and preferred video streaming services.  To avoid banner ads, a user can "upgrade" to a "JustWatch Pro" account for a monthly fee.

28.     JustWatch users can request specific shows, movies, and other video materials on JustWatch.com.

29.     After a user requests specific video materials from JustWatch, JustWatch hosts and delivers prerecorded video content, including snippets, previews and trailers of the specific video content requested.

30.     The following are examples of the video content available on JustWatch after the user searches for the movie titled "Everything Everywhere All at Once."[6]



---

[6] https://www.justwatch.com/us/movie/everything-everywhere-all-at-once (last visited November 29, 2023)



31.    The following are examples of the video content available on JustWatch after the user searches for the movie titled "Rudolph the Red-Nosed Reindeer."[7]



---

[7] https://www.justwatch.com/us/movie/rudolph-the-red-nosed-reindeer (last visited November 29, 2023)



32.     The video clips that JustWatch hosts on its website are integral to its business model of encouraging consumers to select content for further viewing on partner platforms.

33.     JustWatch also links the user to third-party streaming services, such as Netflix, where the user can access the entirety of the video content requested. On information and belief, JustWatch contracts with such third-party streaming services, such as Netflix, to deliver the video the entirety of the content that the consumer selects to view on JustWatch.com.

34.     By advertising video content, accepting and tracking user requests for specific video content, displaying teasers, previews and trailers of video content, and then fulfilling user requests for the entire requested video by directing users to the specific content on partner platforms, like Netflix, JustWatch functions like a modern-day video rental store.

## C.  THE FACEBOOK PIXEL

35.     The Facebook Pixel is a "web beacon" that is used to track and disclose individuals' online activities to Meta.

36.     Meta is an advertising company which sells advertising space on the social media platform it operates, including Facebook and Instagram.

37.     Meta calls itself a "real identity platform," meaning users are allowed only one

account and must share the name they go by in everyday life. Users must provide Meta their first and last name to create an account.

38.     Meta's advertising is based on sophisticated user-categorizing and targeting capabilities that are fueled by the personal data of users of the social media platform and other Internet users.

39.     Meta surveils users' online activities both on and off Meta's own websites and apps, which allows Meta to make highly personal inferences about users, such as about their interests, behavior, and connections.

40.     Meta compiles information it obtains and infers about Internet users and uses it to identify personalized audiences likely to respond to particular advertisers' messaging.

41.     The Facebook Pixel is a free and publicly available piece of code that Meta allows third-party website developers to install and integrate into their websites.

42.     The code that is used to execute the Pixel functions is written into the base code of the website.

43.     The Facebook Pixel is installed on a website as a first-party cookie.

44.     Cookies are small pieces of text used to store information on web browsers. They store and receive identifiers and other information on computers, phones and other devices, and they can serve a number of different functions, such as personalizing content and tailoring and measuring ads.

45.     A "first-party cookie option" is designed to circumvent improvements in how web browsers block third-party cookies (a primary means by which Meta historically tracked people across the web).  Being embedded in websites as a first-party cookie, rather than as a third-party cookie, causes users' browsers to treat that Pixel as though it is offered by the website they are

visiting, rather than by Meta, a third party.

46.    When the Pixel is embedded in a website as a first-party cookie, the third-party cookie blocking functions of modern web browsers do not inhibit the Facebook Pixel's collection of data.

47.    Because of the Pixel design, the Pixel causes users' browsers to treat that Pixel as though it is offered by the website itself.

48.    From a technological perspective, the Pixel is a part of the code of the website, and a users' browser understands the Pixel to be a part of the website itself, not a third-party.

49.    The Facebook Pixel is configured to capture a substantial amount of information by default.

50.    Since 2015 when it was introduced, the Facebook Pixel has transmitted HTTP header information, including the URL of each page visited on a website, by default.  HTTP Headers collect "IP addresses, information about the web browser, page location, document, referrer and persons using the website."

51.    Meta also automatically collects "Pixel-specific Data," which includes "the Pixel ID and cookie."

52.    For Facebook account-holders, "Pixel-specific Data" includes the "c_user" cookie, which allows Meta to link data to a particular Facebook account with a user ID (a "Facebook ID").

53.    The Facebook ID is a unique and persistent identifier assigned to each Facebook user.

54.    The c_user cookie is personally identifiable information because it contains a consumer's Facebook ID. A Facebook ID allows anybody—not just Facebook—to identify the individual    using    a    website    with    a    Facebook    account.    If    anyone    types

www.facebook.com/[FacebookID] into a web browser, it will load that individual's Facebook page, which contains a person's name and often a person's photographs and location information.

55.    The Facebook ID number is a number—just like a social security number, driver's license number, or telephone number—which can be used by anyone to identify an individual.

56.    A Facebook ID is personally identifiable information. Anyone can identify a Facebook profile—and all personal information publicly listed on that profile—by appending the Facebook ID to the end of https://facebook.com.

57.    A website developer can also choose to track actions taken on their website with the Facebook Pixel, called an "Event." When a chosen action is taken, the Facebook Pixel is triggered and sends Meta certain data. Meta then attempts to match the Events it receives to Meta users.

58.    The developer can then create "Custom Audiences" based on Events and can target ads on Meta's platforms.

59.    Meta associates the information it obtains via the Facebook Pixel with other information regarding the user, using personal identifiers that are transmitted concurrently with other personal information the Pixel is configured to collect.

60.    Meta assigns a unique numerical identifier to each Facebook Pixel and maintains records associating each Pixel with the data it transmits and the website where it is embedded.

## D.  JUSTWATCH USES THE FACEBOOK PIXEL TO TRACK AND DISCLOSE USERS' VIDEO VIEWING HISTORIES TO META

61.    JustWatch has integrated the Facebook Pixel throughout its website.

62.    The numerical identifier associated with the Facebook Pixel which currently operates on JustWatch.com is 416036085213374.

63.    The below screenshot shows that JustWatch shares with Meta via the Facebook

13

Pixel an "Event" called "PageView" that tells Meta, among other data points, the page that the consumer is viewing on JustWatch.com. The "PageView" Event tells Meta the specific URL of the page the consumer visited, including the descriptions of the page JustWatch created for consumers.



64.    The below screenshot illustrates that, when consumers are viewing specific video content on JustWatch.com, JustWatch shares with Meta two Events: "PageView" and "Permanent Audience." This information includes the name of the video content selected for viewing.



65.    The final screenshot illustrates that when JustWatch is sharing the specific video content at issue, JustWatch also shares the c_user cookie, which includes the consumer's Facebook ID.



66.    The data JustWatch discloses is tied to unique identifiers that identify specific consumers. The recipients of the data—e.g., Meta—receive both the name of the video content viewed *and* a unique individual identifier, all as part of a single data transmission.



67.    On information and belief, at all relevant times JustWatch understood the

functionality of the Facebook Pixel—including that it enabled JustWatch to show targeted advertising to its subscribers based on their video viewing history—and thus knew that the Facebook Pixel disclosed JustWatch subscribers' individual video viewing histories to Meta.

68.    On information and belief, JustWatch's digital viewing platform also contained similar tracking codes from other third-party advertisers—including Google and TikTok—that had similar functions to the Facebook Pixel described above.

69.    Tracking pixels such as these are not necessary for Defendant to operate JustWatch's video streaming platform and are instead used for the sole purpose of enabling targeted advertising to Defendant's benefit.

70.    As a result of Defendant's data compiling and sharing practices, Defendant has knowingly disclosed to Meta and other third parties for its own personal profit the video viewing histories of JustWatch's users, together with additional sensitive personal information.

71.    By disclosing its users' video viewing histories to unauthorized third parties – which undeniably reveals their identity and the specific video materials they requested from Defendant's website – Defendant has intentionally and knowingly violated the VPPA.

**E.  JUSTWATCH DOES NOT QUALIFY FOR THE VPPA SAFE HARBOR**

72.    The VPPA provides video tape service providers a safe harbor *so long as* the provider (a) obtains "informed, written consent" in a manner that complies with the VPPA and (b) provides users with certain opt-out rights.  18 U.S.C.A. § 2710(b)(2).

73.    As set forth in 18 U.S.C. § 2710(b)(2)(B), "informed, written consent" must be "(1) "in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer"; (2) at the election of the consumer, is either given at the time the disclosure is sought or given in advance for a set period of time not to exceed two years or until consent is

withdrawn by the consumer, whichever is sooner," and (3) "the video tape service provider has provided an opportunity, in a clear and conspicuous manner, for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's election."

74.    JustWatch's disclosures to users do not satisfy the VPPA's strict statutory requirements for informed consent or opt-out rights.

75.    JustWatch's Privacy Policy acknowledges that it uses "Facebook pixels on [its] website," and states that: "in [the Facebook pixels] context, the following types of data may be processed: content data (e.g. entries in online forms, use of the messaging function), usage data (e.g. website access, clicks, access times), metadata and communication data (e.g. device information, IP addresses), and event data (Facebook). Event data includes, for example, visits to websites, interactions with content, installations of apps and purchases of movies. Event data is processed to create target groups for content and advertising information (Custom Audiences). Event data does not include specific content (such as comments written), login information, or contact information (e.g. names, email addresses, and phone numbers)."

76.    JustWatch's disclosures regarding the Facebook Pixel do not satisfy the VPPA's informed, written consent requirement for numerous independent reasons, including:

(a) First, the disclosure states that users' information "may be processed," but it does not explain what it means for JustWatch to "process" a users' data, let alone make clear that users' private video viewing histories are being "processed" in a way that automatically sends that sensitive information to Meta or other third parties.

(b) Second, the disclosure states that the information that "may be processed" does *not* include "specific content … or contact information," when in fact the

information sent to Meta includes both the specific video titles requested and viewed and the users' Facebook ID, which, as described above, is a personally identifying number that allows Meta (and anyone with a web browser) to individually identify (and, if they wish, contact) the specific JustWatch user in the real world.

(c) Third, any relevant video viewing history disclosures in JustWatch's Privacy Policy are not "in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer." 18 U.S.C.A. § 2710(b)(2)(B)(i). Rather, JustWatch uses a general Privacy Policy covering many different legal and financial issues, including, among other things, (i) users' legal rights under the European General Data Protection Regulation (GDPR), which are separate from those that are applicable to American consumers and sweep far broader than just those related to video-viewing history, (ii) JustWatch's use of the "Zendesk" program to automate customer feedback, (iii) JustWatch's use of the "RevenueCat" program to transmit and verify in-app purchases, (iv) JustWatch's use of the "Stripe" system to process payments, (v) JustWatch's use of the "Braze" application to process push messaging, (vi) JustWatch's receipt of revenue and commissions when users' click on affiliate links, (vii) JustWatch's use of the "SnowPlow" application to aggregate user data for statistical purposes, and (viii) JustWatch's use of the "Sentry" program to improve the stability of its platform and identify coding errors. These are just examples of the numerous additional topics covered, which show that the Privacy Policy is not dedicated solely to informing consumers of JustWatch's intent to share users' video

request and viewing histories with third parties.

(d) Fourth, Just Watch fails to provide users with opt-out rights sufficient to satisfy the VPPA because it does not provide "an opportunity, *in a clear and conspicuous manner*, for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's election." 18 U.S.C.A. § 2710(b)(2)(B)(iii) (emphasis added). The Facebook Pixel information in JustWatch's Privacy Policy ambiguously and misleadingly states that users' data "may be processed," and is inconspicuously included in body of the Privacy Policy in the same font and size as the other language in the policy and otherwise not set off in any way to make it conspicuous to the consumer. JustWatch does not provide U.S. consumers any withdrawal rights from ongoing disclosures— let alone clear and conspicuous withdrawal rights.

## CLASS ALLEGATIONS

77.    Plaintiffs bring this action individually and on behalf of all others similarly situated as a class action under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of the following class (the "Class"):

> During the fullest period allowed by law, all persons in the United States who: (1) have a JustWatch account; and (2) requested or viewed videos on JustWatch.com.

78.    Excluded from the Class are Defendant, their past or current officers, directors, affiliates, legal representatives, predecessors, successors, assigns and any entity in which any of them have a controlling interest, as well as all judicial officers assigned to this case as defined in 28 USC § 455(b) and their immediate families. Plaintiffs reserve the right to modify, change, or expand the Class definition based upon discovery and further investigation.

19

79.    Numerosity. Members of the Class are so numerous and geographically dispersed that joinder of all members of the Class is impracticable. Plaintiffs believe that there are hundreds of thousands of members of the Class dispersed throughout the United States. Class members can be identified from Defendant's records.

80.    Typicality. Plaintiffs' claims are typical of the claims of members of the Class. Plaintiffs and members of the Class were harmed by the same wrongful conduct by Defendant in that Defendant caused JustWatch users' video viewing histories to be disclosed to third parties without obtaining express written consent in a manner that complies with the VPPA. Plaintiffs' claims are based on the same legal theories as the claims of other Class members.

81.    Adequacy. Plaintiffs will fairly and adequately protect the interests of the Class. By prevailing on his own claims, Plaintiffs will establish Defendant's liability to all Class members. Plaintiffs' counsel are unaware of any conflicts of interest between Plaintiffs and absent Class members with respect to the matters at issue in this litigation; Plaintiffs will vigorously prosecute the suit on behalf of the Class; and Plaintiffs are represented by attorneys with substantial experience and expertise in complex and class action litigation, including in class action privacy litigation. Plaintiffs' attorneys have investigated the claims in this action and have committed sufficient resources to represent the Class.

82.    Commonality. Questions of law and fact common to the members of the Class predominate over questions that may affect only individual members of the Class because Defendant has acted on grounds generally applicable to the Class. Such generally applicable conduct is inherent in Defendant's wrongful conduct. Questions of law and fact common to the Classes include:

        i.    whether Defendant disclosed Class members' video viewing histories to

        Meta;

    ii.   whether the information Defendant disclosed to third parties constitutes personally identifiable information under the VPPA;

    iii.   whether Defendant's disclosure of Class members' video viewing history to third parties was knowing under the VPPA;

    iv.   whether Class members consented to Defendant's disclosure of their video viewing histories in a manner that complies with the VPPA; and

    v.   whether the Class is entitled to damages under the VPPA as a result of Defendant's conduct.

83.    <u>Predominance</u>. Such common questions predominate over questions affecting only individual members of the Class.

84.    <u>Superiority.</u> The maintenance of the action as a class action will be superior to other available methods of adjudication and will promote the convenient administration of justice. Moreover, the prosecution of separate actions by individual members of the Class could result in inconsistent or varying adjudications with respect to individual members of the Class and/or Defendant.  The benefits of proceeding through the class mechanism, including providing injured persons or entities a method for obtaining redress on claims that could not practicably be pursued individually, substantially outweighs potential difficulties in management of this class action.

85.    Plaintiffs know of no special difficulty to be encountered in litigating this action that would preclude its maintenance as a class action.

86.    Plaintiffs reserve the right to seek certification of Rule 23(c)(4) of common questions related to Defendants' knowledge, conduct, and duties.

## CAUSES OF ACTION

### COUNT 1:
### Violation of the Video Privacy Protection Act, 18 U.S.C. § 2710

87.     Plaintiffs incorporate the allegations contained in the above paragraphs of this complaint as though fully set forth herein.

88.     The VPPA prohibits a "video tape service provider" from knowingly disclosing "personally-identifying information" concerning any consumer to a third-party without the "informed, written consent (including through an electronic means using the Internet) of the consumer." 18 U.S.C § 2710.

89.     As defined in 18 U.S.C. § 2710(a)(4), a "video tape service provider" is "any person, engaged in the business, in or affecting interstate commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audiovisual materials."

90.     Defendant is a "video tape service provider" as defined in 18 U.S.C. § 2710(a)(4) because it engaged in the business of delivering prerecorded video materials to JustWatch users.

91.     Defendant's business includes both (a) delivering JustWatch users' specific video content hosted on the JustWatch platform, and (b) delivering JustWatch users' specific video content hosted on other streaming platforms.

92.     As defined in 18 U.S.C. § 2710(a)(3), "personally-identifiable information" is defined to include "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."

93.     Defendant knowingly caused information which identifies Plaintiffs and Class members as having requested or obtained specific video materials or services from JustWatch.com to be disclosed to third parties. This information constitutes personally identifiable information under 18 U.S.C. § 2710(a)(3) because it identified each Plaintiff and Class member to third parties

as an individual who requested or viewed specific video materials on JustWatch.com.

94.    As defined in 18 U.S.C. § 2710(a)(1), a "consumer" means "any renter, purchaser, or subscriber of goods or services from a video tape service provider." As alleged in the preceding paragraphs, Plaintiffs subscribed to JustWatch.com by creating a JustWatch account and thereafter using JustWatch to request and view specific video content. Plaintiffs are thus "consumers" under this definition.

95.    Defendant failed to obtain informed, written consent from Plaintiffs and other Class members for the disclosures described above in a manner that satisfies 18 U.S.C. § 2710(b)(2)(B).

96.    Defendant knew that Plaintiffs' and Class members' personally-identifiable information protected under the VPPA was disclosed to third parties, because, *inter alia*, Defendant chose, programmed, and intended for those third parties to receive the video content requested or viewed and the digital subscribers' specific Facebook ID.

97.    By disclosing Plaintiffs' and the Class's personally-identifiable information protected under the VPPA, Defendant violated Plaintiffs' and the Class members' statutorily protected right to privacy in their video- watching habits. *See* 18 U.S.C. § 2710(c).

98.    As a result of the above violations, Defendant is liable to the Plaintiffs and other Class members for actual damages related to their loss of privacy in an amount to be determined at trial or alternatively for "liquidated damages not less than $2,500" per violation. Under the statute, Defendant is also liable for reasonable attorney's fees, and other litigation costs, injunctive and declaratory relief, and punitive damages in an amount to be determined by a jury, but sufficient to prevent the same or similar conduct by the Defendant in the future.

## PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves and the proposed Class, respectfully request that the Court enter judgement against Defendant as follows:

A.    Determine that this action may be maintained as a class action pursuant to Fed R. Civ. P. 23(a), (b)(2), and (b)(3) and declare Plaintiffs as the representatives of the Class and Plaintiffs' Counsel as Class Counsel;

B.    For an order declaring that Defendant's conduct as described herein violates the federal VPPA, 18 U.S.C. § 2710(c)(2)(D);

C.    For Defendant to pay at least $2,500.00 to each Plaintiff and each Class member per violation, as provided by the VPPA, 18 U.S.C. § 2710(c)(2)(A);

D.    For punitive damages, as warranted, in an amount to be determined at trial, 18 U.S.C. § 2710(c)(2)(B);

E.    For prejudgment interest on all amounts awarded;

F.    For an order of restitution and all other forms of equitable monetary relief;

G.    For injunctive relief as pleaded or as the Court may deem proper; and

H.    For an order awarding Plaintiffs and the Class their reasonable attorneys' fees and expenses and costs of suit, 18 U.S.C. § 2710(c)(2)(C).

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

Dated:  November 30, 2023                Respectfully submitted,

COREY FUHRHOP AND JAMES LESLIE
individually and on behalf of all others similarly
situated

By their attorneys,

*/s/ Raymond P. Ausrotas*

_____

Raymond P. Ausrotas (BBO# 640315)
rausrotas@arrowoodllp.com
William F. McGonigle (BBO #569490)
wmcgonigle@arrowoodllp.com
ARROWOOD LLP
10 Post Office Square, 7th Floor South
Boston, MA 02109
(617) 849-6200 (Tel)/(617) 849-6201 Fax)

- and -

Eric S. Dwoskin
(**Pro Hac Vice Pending**)
DWOSKIN WASDIN LLP
433 Plaza Real, Suite 275
Boca Raton, FL 33432
Tel.: (561) 849-8060
edwoskin@dwowas.com